# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:09-CV-487-MOC-DCK

| | |
|---|---|
| K. A. HOLDINGS, LTD. OF NY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| CHRISTOPHER CHAGARIS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss And Award Defendant Costs" (Document No. 59). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied in part and granted in part.

## I. BACKGROUND

This matter has a somewhat lengthy history. The case originated on October 31, 2007, with Plaintiff Hanfords Creations, LLC's filing of a "Verified Complaint" (Document No. 1) against Defendant Christopher Chagaris ("Defendant") in the United States District Court for the Southern District of New York. An "Amended Complaint" (Document No. 15) was filed on June 18, 2008, identifying Plaintiff as "KA Holdings Of New York, Ltd. a/k/a KA Holdings Ltd Of NY a/k/a KA Holdings Ltd." Plaintiff K. A. Holdings Ltd. Of NY ("Plaintiff") filed a "Second Amended Complaint" (Document No. 27) on October 7, 2008.

On November 3, 2008, Defendant filed a "Notice Of Motion" (Document No. 29) seeking an order dismissing the Second Amended Complaint for lack of personal jurisdiction and/or

improper venue, or in the alternative, transferring the case to the Western District of North Carolina. The motion also sought dismissal for failure to state a claim and failure to plead fraud with requisite particularity and/or lack of standing. (Document No. 29). That motion did not raise any argument that Plaintiff's claims were time barred. Id.

The Honorable James S. Gwin issued an "Opinion & Order" (Document No. 47) on November 13, 2009, addressing Defendant's motion to dismiss. Judge Gwin's order contains an excellent summary of the facts of the case. The case arises out of Defendant Chagaris's representation of Plaintiff KA Holdings related to a transaction for the sale of property in North Carolina. Defendant Chagaris is an attorney licensed to practice law in North Carolina. Plaintiff is a New York Corporation with its general place of business in Rockland, New York.

In June 2001, Plaintiff entered into a contract for the sale of certain property located in North Carolina to Overland Properties, Inc. ("Overland"). In conjunction with the sale of property, Plaintiff entered into an escrow agreement in October 2001 with Moore & Van Allen PLLC and Hawthorne Mill, LLC ("Hawthorne"). In 2002, the American Arbitration Association, after an arbitration proceeding in Westchester, New York, issued an arbitration award in favor of Plaintiff and against Hawthorne, finding that Hawthorne had breached its contract.

In April 2002, Plaintiff hired Defendant Chagaris to confirm the arbitration award in North Carolina state court and to take steps to satisfy that award. In approximately June or July 2002, Defendant Chagaris filed a lawsuit, Docket No. 02-CVS-16135, in the Superior Court of North Carolina, County of Mecklenburg ("First NC Action"). The First NC Action was entitled <u>KA Holdings Ltd. of NY v. Hawthorne Mill, LLC</u>. Throughout the summer and fall of 2002, Plaintiff, through its principal, Carl Mancini ("Mancini"), repeatedly attempted to contact the Defendant to learn about the status of the lawsuit. Defendant Chagaris gave vague responses and failed to send

Plaintiff requested litigation documents. On November 21, 2002, Superior Court Judge Marcus L. Johnson held a hearing regarding the First NC Action. Plaintiff alleges that Defendant Chagaris failed to notify it of the hearing, failed to effectively represent it, failed to perfect an appeal on its behalf, and following repeated requests, failed to provide Plaintiff with a transcript of the hearing.

On December 10, 2002, Judge Johnson dismissed with prejudice Plaintiff's claim to confirm the arbitration and vacated its arbitration award against Hawthorne. Plaintiff alleges that while Defendant told it that the Judge had denied the confirmation, he concealed the fact that the arbitration had been vacated, told Plaintiff that the judge "had ruled in error out of ignorance for the law," and insisted that no written order existed and that KA Holdings was not prejudiced by the decision.

Throughout December 2002 to March 2003, Mancini frequently wrote to Defendant requesting an update on an appeal of the North Carolina court's decision. Mancini also questioned Defendant about invoices Plaintiff received from Chagaris during this period because he had received no updates on the pending litigation. On or about March 31, 2003, Plaintiff says Chagaris told Plaintiff that it would be quicker and easier to obtain relief by filing a new action for breach of contract while the appeal was pending. Plaintiff later learned that while Chagaris had filed a notice of appeal in the First NC Action, he had not perfected it and the time for an appeal had run. Based upon Chagaris's representations, Plaintiff authorized Chagaris to file another action on its behalf.

In July 2003, Chagaris filed another action on behalf of the Plaintiff ("Second NC Action") in an attempt to recover the same relief as in the First NC Action. This action was entitled <u>KA Holdings of New York, Inc. v. Overland Properties, Inc. and Hawthorne Mill LLC</u>, Docket No. 03-CVS-12766. The defendant in that action, Overland Properties, Inc., moved to dismiss based on res judicata and collateral estoppel. Defendant Chagaris failed to communicate with Plaintiff

regarding the substance of the motion to dismiss and failed to inform Plaintiff that Chagaris had been served with notice that Mancini was to appear for a deposition in September 2003. In May 2004, Plaintiff's New York counsel, Charles Diven ("Diven"), learned that Overland/Hawthorne had moved the court for sanctions due to Plaintiff's failure to prosecute and/or to comply with discovery. Throughout May to December 2004, Plaintiff and Diven attempted to contact Chagaris to obtain copies of relevant litigation documents and expressed their growing frustration.

The presiding North Carolina court held a hearing on the motion for summary judgment in the Second NC Action in February 2005. The Defendant did not inform the Plaintiff that the hearing was taking place. On March 21, 2005, Judge Bridges of the Mecklenburg County, North Carolina Superior Court granted partial summary judgment to the defendants and dismissed all causes of action except the claim for wrongful conversion of property. At the recommendation of Chagaris, who allegedly told the Plaintiff that he could "correct the situation by withdrawing the Second N.C. Action and then re-filing same," KA Holdings voluntarily dismissed the Second NC Action on March 28, 2005.

Superior Court Judge Gray held a hearing on Overland/Hawthorne's motion for sanctions on March 31, 2005, and Judge Gray awarded sanctions against Plaintiff KA Holdings, but not against Chagaris. Defendant Chagaris did not provide Plaintiff or Diven with the transcript of these proceedings until September 2006. Plaintiff did not receive a copy of Judge Gray's order until 2007. The Plaintiff alleges that Chagaris misrepresented the status of the litigation at the March 31 hearing and blamed his own inaction and lack of prosecution on Plaintiff. Plaintiff also later learned that Chagaris had filed a notice of appeal of Judge Gray's order, but failed to perfect the appeal.

Throughout April to July 2006, Plaintiff, through Mancini and its additional principal, Bruce Adler ("Adler"), attempted to schedule a face-to-face or telephone conference with Chagaris and

Diven, but Chagaris repeatedly cancelled and/or said he was unavailable. On approximately June 6, 2006, Chagaris filed a third action in the Mecklenburg County, North Carolina Superior Court containing a single cause of action for conversion of property ("Third NC Action"). This action was entitled KA Holdings of New York, Inc. v. Overland Properties, Inc. and Hawthorne Mill, LLC, Docket No. 06-CVS-6006.

On August 3, 2006, Judge Cayer dismissed the Third NC action on the ground it was barred by the applicable statute of limitations. In September 2006, Mancini was still writing to Defendant in an attempt to meet with him and get an update on the status of the litigation. Without Plaintiff's knowledge or permission, Chagaris filed an appeal of Judge Cayer's order. On September 20, 2006, Judge Richard Boner dismissed the appeal, noting Chagaris's failure to comply with the North Carolina Rules of Appellate Procedure. Judge Boner found that Chagaris had failed to serve the defendants with the Notice of Appeal and had provided no proof of service, as required by the Rules. In a separate order, Judge Boner also sanctioned Chagaris, noting that Chagaris had, *inter alia*, made misrepresentations to Judge Gray, and ordered Chagaris to pay the defendants' litigation expenses. Chagaris did not inform the Plaintiff of Judge Boner's rulings.

Throughout September to December 2006, Mancini continued to try to schedule a meeting with Chagaris, to ask for updates on the status of the litigation, and to request copies of hearing transcripts and orders. Plaintiff eventually hired additional outside counsel due to Chagaris's continued inaction. Mancini, Adler, and Diven became more fully aware of Chagaris's actions and the status of the North Carolina litigation in or about January 2007. On October 31, 2007, the Plaintiff filed the present action against Defendant Chagaris in New York.

The United States District Court for the Southern District of New York denied Defendant's motion to dismiss (Document No. 29) for improper venue, lack of subject matter jurisdiction or

5

personal jurisdiction, and granted Defendant's motion to transfer to this Court. (Document No. 47, p.20). Once the Court recognized the defects in personal jurisdiction and venue, the remaining question was whether the case should be dismissed on those grounds or, in the interests of justice, transferred to a district where jurisdiction and venue are proper. (Document No. 47, p.18). Judge Gwin specifically opined that "[a]s the statute of limitations may have run on Plaintiff's legal malpractice, breach of fiduciary duty, and negligent misrepresentation claims the Court finds that dismissal of this action would unfairly prejudice the Plaintiff and, therefore, transfer is the more appropriate remedy." (Document No. 47, p.20). This lawsuit was transferred from the Southern District of New York to the Western District of North Carolina on or about November 16, 2009. (Document No. 48).

On March 11, 2010, "Defendant's Motion To Dismiss" (Document No. 51) was filed in this Court, pursuant to Fed.R.Civ.P. 41. On April 4, 2011, the Honorable Max O. Cogburn, Jr. granted in part, and denied in part, "Defendant's Motion To Dismiss." (Document No. 56). Judge Cogburn's "Order" held that "the solution in this matter is not to dismiss the action, but to strike the appearance of un-admitted counsel." Id. On July 6, 2011, Defendant filed his "Answer And Affirmative Defenses To Second Amended Complaint" (Document No. 58). Accordingly, it appears that the parties should have held an Initial Attorney's Conference on or before July 20, 2011, and should have filed a Certification Of Initial Attorney's Conference on or before July 27, 2011.

On December 5, 2011, Defendant filed his now pending "Motion To Dismiss And Award Defendant Costs" (Document No. 59) pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9. "Plaintiff's Response..." (Document No. 61) was filed December 22, 2011, followed by the filing of the "Reply Memorandum Of Law Of Defendant..." (Document No. 62) on January 3, 2012. Immediate review of the pending motion and recommendation for disposition to the presiding

6

district judge is now appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir.

1993).

## III. DISCUSSION

Defendant's motion presents three main arguments for dismissal: (1) Plaintiff's allegations and claims are time barred; (2) New York Judiciary Law § 47 is inapplicable here; and (3) Plaintiff has failed to plead fraud with particularity. The undersigned will address each of these arguments in turn.

### A. Statute of Limitations

First, Defendant argues that Plaintiff's claims for legal malpractice, fraud, breach of fiduciary duty, and conversion are barred by applicable North Carolina statutes of limitation. (Document No. 60, pp.6-12) (citing N.C.Gen.Stat. §§ 1-15(c) and 1-52). Defendant notes that the North Carolina Supreme Court has held that "[a] statute of limitation or repose may be the basis of a 12(b)(6) dismissal if, on its face, the complaint reveals the claim is barred by the statute." (Document No. 60, p.6) (citing Cage v. Colonial Building Co., 337 N.C. 682, 683 (1994)).

Defendant asserts, and the parties appear to agree, that Plaintiff's claims are subject to a three (3) year statute of limitations, with "an additional one-year-from-discovery period for injuries 'not readily apparent' subject to a four-year period of repose...." (Document No. 60, p.7) (quoting Black v. Littlejohn, 312 N.C. 626, 634 (1986)); see also, (Document No. 61, pp.4-5) (quoting Ramboot, Inc. v. Lucas, 181 N.C.App. 729-33 (2007). North Carolina General Statute § 1-15 provides in pertinent part:

> a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time

8

> of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made . . . in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action....

N.C.Gen.Stat. § 1-15(c).

Defendant argues that the allegations and claims in Plaintiff's First, Second, Third and Fifth causes of action, if taken as true, are time barred. (Document No. 60, pp.9-12). In support of his argument, Defendant cites several paragraphs in the Second Amended Complaint that describe allegations as occurring "over a period of more than four years," or with similar language. Id. (citing Document No. 27, ¶¶ 176, 185, 189, 201, 205, 217, 221, 249, and 251). In addition, Defendant identifies several paragraphs in the Second Amended Complaint which he contends allege the occurrence of malpractice in November 2002 and/or July 2003. Id. (citing ¶¶ 44, 45, 66, 68, and 69). Defendant appears to conclude that these specific sections of the Second Amended Complaint support a finding that these causes of action should be dismissed based on the passage of time.

Plaintiff argues that for Defendant to prevail on the instant motion, he must show that Plaintiff pled a specific event for which the last act or occurrence giving rise to the matter occurred earlier than October 31, 2004. (Document No. 61, p.5). If Defendant can make such a showing, then Plaintiff may show that upon that date its damages were not readily apparent and were not discovered for more then two years hence, and once discovered were brought within one year. Id. Plaintiff further argues that the duration, or first occurrence, of Defendant's wrongdoing is not dispositive to the question of the accrual of an action for malpractice. (Document No. 61, p.6). "Rather, the sole determinative factor is the date of the *last action or omission* giving rise to the

malpractice claim for the purposes of limitations, and perhaps the date upon which the plaintiff discovered the wrongdoing for purposes of repose." Id.

Plaintiff asserts that the facts in the Complaint show that the latest date upon which Defendant could have taken action to protect his client's interests was no earlier than September 23, 2006. (Document No. 61, pp.6-7). Plaintiff concludes that since August 23, 2006 was the date the Third NC Action was dismissed, and a notice of appeal was due within one (1) month, therefore September 23, 2006 is the *earliest* the last action or omission could have occurred. Id.

It appears that Judge Gwin agreed with Plaintiff's assessment, when he stated "[o]n September 20, 2006, Judge Richard Boner dismissed the appeal in the Third NC Action. As this order affirmed the dismissal of the Third NC Action as time barred, this was the last possible date on which Defendant Chagaris could have taken any action in the Plaintiff's North Carolina case." (Document No. 47, pp.19-20).

The undersigned agrees that the crucial inquiry here is the date "of the last act of the defendant giving rise to the cause of action." N.C.Gen.Stat. § 1-15(c). In a recent decision by this Court where a Plaintiff asserted claims for professional negligence, fraud, and obstruction of justice, Judge Cogburn found that the claims included no allegation of a recent discovery of wrongful conduct and were over 19 years old, and were therefore time barred by North Carolina's four year statute of repose. Launeil Sanders v. Peter Gilchrist, et al., 3:10-CV-068-MOC-DSC, (Document No. 4) (W.D.N.C. March 22, 2011). Judge Cogburn's "Order" in Sanders further provided:

> Claims for professional negligence are "deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action[,]" and the statute of repose bars actions accruing four years prior to the filing of a claim. N.C.Gen.Stat. § 1-15(c) (2009). Fraud and obstruction of justice must be brought within three years from the time the cause of action accrues, and an action accrues when a plaintiff becomes aware or reasonably should have become

10

aware of the fraud or harm. N.C.Gen.Stat. § 1-52(9), (16) (2009).

Id. (citing Self v. Yelton, 688 S.E.2d 34, 38 -39 (N.C.App. 2010)).

The undersigned also finds other cases instructive on the issue of determining the "last act of the defendant giving rise to the cause of action": In Goodman v. Holmes & McLaurin Attorneys at Law, a former client brought suit against his attorney, asserting claims for negligence, professional malpractice, fraud, gross negligence and breach of fiduciary duty based on the attorney's conduct voluntarily dismissing the client's case without the client's knowledge or consent. Goodman v. Holmes & McLaurin Attorneys at Law, 192 N.C.App. 467, 468 (2008). Applying N.C.Gen.Stat. § 1-15(c), the Goodman decision held that:

> In the instant case, the facts show that on 21 October 1997, McLaurin voluntarily dismissed without prejudice plaintiff's claims arising from the 1992 accident. **Rule 41(a) of the North Carolina Rules of Civil Procedure requires that any new action after a voluntary dismissal be refiled within one year after the dismissal**. N.C.Gen.Stat. § 1A-1, Rule 41(a) (2007). **Thus, the last opportunity for McLaurin to act on plaintiff's claim occurred on 21 October 1998**. Plaintiff brought his professional malpractice action against McLaurin on 9 May 2006, nearly seven years after McLaurin's last act. Thus, plaintiff's professional negligence claim was barred by the statute of repose, and the trial court did not err in dismissing plaintiff's claim.
>
> We note that the actions of McLaurin, as alleged in plaintiff's complaint, are particularly egregious. However, it is for the legislature, and not the courts, to establish statutes of limitations, statutes of repose, and any exceptions to those rules. It is not the role of the courts to create exceptions to the laws established by the legislature where the intent of the legislature is made manifestly clear on the face of the statute. See Diaz v. Div. of Soc. Servs., 360 N.C. 384, 389, 628 S.E.2d 1, 4-5 (2006).

Goodman, 192 N.C.App. at 475-76. (Emphasis added). See also, Fender v. Deaton, 153 N.C.App. 187, 191 (2002) (last act of alleged malpractice was one year after voluntary dismissal, where attorney voluntarily dismissed case without clients' knowledge or consent, and then failed to timely

re-file their case) disc. rev. denied 356 N.C. 612 (2002).

In Ramboot, Inc., the North Carolina Court of Appeals affirmed a trial court's summary judgment decision finding that the clients' claims against their former attorney were time barred. Ramboot, Inc., 181 N.C.App. at 735. In addressing the critical question of what action of the attorney and his law firm should be deemed the "last act of the defendant giving rise to the cause of action," the court stressed that the question is not when the attorney-client relationship begins or ends. Id. at 733.

> Moreover, only the last act by [counsel] and his law firm that "giv[es] rise to the cause of action" triggers the statute of limitations, not any or all acts undertaken by him in his capacity as the [plaintiffs] attorney. See Teague v. Isenhower, 157 N.C.App. 333, 338 n.2, (finding that the statute of limitations began to accrue at **the last alleged act of malpractice** at the trial level, not by the discharge of the attorney following representation at the appellate level), disc. review denied, 357 N.C. 470, 587 S.E.2d 347 (2003). This determination as to the last act giving rise to an action for malpractice is a conclusion of law appropriate for the trial judge to make based on the facts presented, such as the dates of relevant events in the attorney-client relationship.

Id. at 734. (Emphasis added). In Ramboot, Inc., the court held "that 'the last act of the defendant giving rise to the cause of action' in the instant case occurred no later than the time at which the [plaintiffs] signed the release prepared by the insurance company and took possession of their settlement check." Id. at 735.

In Sharp v. Gailor, the court determined that the plaintiff's complaint was filed on November 26, 1996, and therefore, her legal malpractice claims were barred unless they were supported by acts or omissions occurring after November 26, 1993. Sharp v. Gailor, 132 N.C.App. 213, 215 (1999). The Sharp decision notes that an appellate brief and record had been filed on October 4, 2003, and that "[a]ny malpractice claim based on the erroneous preparation of that brief is based on acts or

omissions that occurred on or before October 1993, so the claim is barred by G.S. 1-15(c)." Id. at 216. The court opined that once the appellate brief "was filed, nothing could be done to 'correct' it; the matter was out of defendants' hands." Id. The court in Sharp also held that other alleged acts and/or omissions occurring after November 26, 1993 did not constitute actionable legal malpractice. Id. at 215-216. Therefore, in Sharp the court dated "the accrual of the claim against the lawyer to the day the defendant attorney filed a brief in this Court, and not later when the plaintiff fired the defendant." Carlisle v. Keith, 169 N.C.App. 674, 684 (2005).

The first Complaint in this case was filed October 31, 2007; as such Plaintiff must have alleged that Defendant's last act or omission giving rise to these causes of action occurred on or after October 31, 2004. Although Plaintiff certainly alleged some wrongdoing, improper conduct, and/or mistakes by Defendant over a period of four years, some of which possibly dated to November 2002 and/or July 2003, neither the Second Amended Complaint, nor Defendant, have specifically identified a "last act of Defendant giving rise to a cause of action" that clearly occurred outside the applicable statute of limitations. (Document No. 27). Defendant's motion to dismiss concludes that all of Plaintiff's claims are precluded by the statute of limitations, but fails to describe the date or event of the last act giving rise to any of Plaintiff's causes of action. (Document No. 60). As noted above, Defendant asserts that "Plaintiff alleges Defendant's malpractice occurred in November of 2002" and "in July of 2003." (Document No. 60, pp.9-10) (citing Document No. 27, pp.5-7). However, the undersigned is not persuaded that those sections of the Second Amended Complaint identified by Defendant describe acts that necessarily trigger the statute of limitations. Id.

Plaintiff argues that Defendant rests his argument on general contentions in the Second Amended Complaint describing a pattern of deceit over four years and errors that might amount to malpractice, first occurring in November 2002. (Document No. 61, p.5). Plaintiff further argues

13

that the first act and duration of the alleged wrongdoing is irrelevant; the last act will generally be the latest date upon which an attorney can take action to protect his client's interests. (Document No. 61, p.7).

Accepting Plaintiff's recitation of the facts as true, Plaintiff clearly alleges that Defendant filed the Third NC Action on or about June 6, 2006, "to correct his errors and/or omissions in the prior two (2) actions...." (Document No. 27, p.12). According to Plaintiff, and apparently Judge Gwin, Defendant's last act or omission was his failure to adequately appeal the dismissal of the Third NC Action, in or about September 2006.

Based on the foregoing, and for purposes of this motion to dismiss, the undersigned is satisfied that Plaintiff has stated a plausible claim. Neither the Second Amended Complaint or the parties' briefs are models of clarity on the key facts relating to the critical question of when Plaintiff's causes of action accrued. Following appropriate discovery, the Court may be in a better position to determine whether any or all of Defendant's alleged wrongdoing is barred by statutes of limitation or repose. Under these circumstances, the undersigned will recommend that the motion to dismiss Plaintiff's claims as barred by the statute of limitations be denied.

**B. New York Judiciary Law**

Next, Defendant's pending motion to dismiss asserts that Plaintiff's Fourth Cause Of Action must be dismissed because New York Judiciary Law § 487 only applies to an attorney's conduct in New York State during the pendency of a lawsuit in New York courts. (Document No. 60, p.12) (citing Schertenleib v. Traum, 589 F.2d 1156, 1166 (2d Cir. 1978) ("section 487 of New York's Judiciary Law . . . does not apply to acts by attorneys outside New York's territorial borders.")).

For further support, Plaintiff points to Judge Gwin's finding that Plaintiff does not allege that Defendant was ever physically in New York, and therefore, could not find that he committed a

tortious act within New York. Id. (citing Document No. 47, p.16).

"Plaintiff's Response To Defendant's Motion To Dismiss" (Document No. 61) fails to address Defendant's argument for dismissal of the Fourth Cause of Action. As such, and for good cause shown, the undersigned will recommend that the Plaintiff's Fourth Cause of Action be dismissed.

**C. Fraud**

Defendant also contends that Plaintiff's claims of fraud contained within its First, Second, Third and Fifth Causes of Action fail to sufficiently plead specific allegations that satisfy the particularity requirement of Rule 9(b), and should therefore be dismissed for failure to state a fraud claim. (Document No. 60, p.13).

The requirements of fraud and constructive fraud claims are well-established in relevant caselaw:

> There are two types of fraud, actual and constructive. Watts v. Cumberland County Hosp. System, 317 N.C. 110, 115, 343 S.E.2d 879, 883 (1986). The well-established elements of actual fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007).
> . . .
> Proof of constructive fraud is less exacting than what is required for actual fraud. Watts, 317 N.C. at 115–16, 343 S.E.2d at 884. A plaintiff can establish constructive fraud by showing "(1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction." Sullivan v. Mebane Packaging Grp., Inc., 158 N.C.App. 19, 32, 581 S.E.2d 452, 462 (2003).
> When the parties are engaged in a fiduciary relationship, constructive fraud is presumed when the "superior party obtains a possible benefit." Id. "This presumption arises not so much because

15

> [the fiduciary] has committed a fraud, but [because] he may have done so." Watts, 317 N.C. at 116, 343 S.E.2d at 884 (citing Atkins v. Withers, 94 N.C. 581, 590 (1886)). After the plaintiff has established "a prima facie case of the existence of a fiduciary duty, and its breach, the burden shifts to the defendant to prove he acted in an 'open, fair and honest' manner, so that no breach of fiduciary duty occurred." Estate of Smith v. Underwood, 127 N.C.App. 1, 9, 487 S.E.2d 807, 812 (1997).

Collier v. Bryant, 719 S.E.2d 70, 80-81 (N.C.App. 2011).

> A constructive fraud claim requires even less particularity because it is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

Searcy v. Searcy, 715 S.E.2d 853, 857-858 (N.C.App. 2011) (quoting Terry v. Terry, 302 N.C. 77, 85 (1981)).

Defendant argues that the Second Amended Complaint fails to state the elements of a fraud claim. Most specifically, Defendant asserts that the allegations: (1) are vague and conclusory; (2) fail to allege he took advantage of his position to benefit himself; (3) fail to identify actual false representation; and (4) fail to connect the alleged fraudulent acts of Defendant with any specific injury other than mental anguish and distress. (Document No. 60, pp.13-14).

Plaintiff contends that it has sufficiently pled actual and constructive fraud. (Document No. 61, p.8). Plaintiff asserts that the Second Amended Complaint alleges that Defendant "failed to disclose the truth about the actions he was taking in an effort to hide mistakes, and continued to collect legal fees in the process." (Document No. 61, p.9). Plaintiff's response provides that the particularity requirement was met by alleging the time, place and content of the fraudulent

representation; the identity of the person making the representation; and what was obtained as a result of the fraudulent acts or representations. Id. Plaintiff further asserts that it has alleged that Defendant's "misrepresentations and omissions of material facts were motivated to protect himself from liability and for his own pecuniary interests." Id. In addition to alleging that Defendant benefitted from continuing legal fees and the avoidance of liability, Plaintiff also specifically alleged that Defendant kept $1,000 for his personal use from transcript fee(s) collected from Plaintiff.

The undersigned observes that generally "[i]n order to satisfy the second element of constructive fraud, a plaintiff must allege, 'the benefit sought was more than a continued relationship with the plaintiff or payment of a fee to a defendant for work it actually performed.'" Clay v. Monroe, 189 N.C.App. 482, 488 (2008) (quoting White v. Consolidated Planning, Inc., 166 N.C.App. 283, 295 (2004)). Although Plaintiff's satisfaction of this element may ultimately present a close call, it appears that Plaintiff has sufficiently alleged a fraud claim to survive dismissal at this stage of the litigation.

Based on the allegations, as well as the fact that a constructive fraud "defies specific and concise allegations," the undersigned will respectfully recommend that discovery should be allowed on this point, and the motion to dismiss should be denied as to the fraud claims. See Olympus Managed Health Care, Inc. v. American Housecall Physicians, Inc., 3:08cv532-RJC-DSC, 662 F.Supp.2d 427, 438-439 (W.D.N.C. 2009); see also, Schmidt, III v. Wachovia Bank, N.A., 3:08-cv-185-RJC-CH, 2008 WL 5396684 at *1-2 (W.D.N.C. Dec. 23, 2008) ("viewing the complaint in the light most favorable to the plaintiff, the Court finds that plaintiff has sufficiently alleged the benefit element of its constructive fraud claim.").

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that

Defendant's "Motion To Dismiss And Award Defendant Costs" (Document No. 59) be **GRANTED in part, and DENIED in part,** as described herein. The undersigned further recommends that Defendant's request for attorney fees and costs be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

Signed: February 24, 2012

David C. Keesler
United States Magistrate Judge

18