IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv487

| K.A. HOLDINGS LTD. OF N.Y., a/k/a | ) |
| K.A. HOLDINGS OF NEW YORK, | ) |
| LTD., a/k/a K.A. HOLDINGS, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| Vs. | ) |
| | ) |
| CHRISTOPHER CHAGARIS, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#89). Plaintiffs have responded and defendant has since replied. A hearing was held on this motion as well as defendant's Motion for Reconsideration of Court's Ruling on Defendant's Motion for Costs and Sanctions (#85) and Motion to Disqualify Plaintiff's Expert & Award Costs and Fees (#89). Having carefully considered the motion, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    FACTUAL BACKGROUND**

This matter involves defendant's representation of plaintiff during a number of suits from 2002-2006 all relating to the same broken real estate deal between plaintiff and Overland Properties, Inc. and Hawthorne Mill, LLC (together "the third party"), and the proper disposition of an escrow deposit. The sales contract called for any dispute to be settled in arbitration, the result of which was an award in favor of plaintiff. In April of 2002, plaintiff hired Mr. Chagaris to confirm the award, and in June or July, defendant filed a lawsuit in Mecklenburg Superior

1

Court, Docket No. 02-CVS-16135 (the "first action"), to do so. Second Am. Compl., ECF No. 27 ¶ 40, Oct. 7, 2008 (hereinafter "Complaint").

Throughout the summer and fall of 2002, plaintiff, through its principal, Carl Mancini ("Mancini"), repeatedly attempted to contact defendant about the status of the case. Defendant gave vague responses and failed to send plaintiff certain requested litigation documents.

A hearing was held on the Motion to Confirm the Award, after which, on December 12th, Superior Court Judge Marcus L. Johnson entered an order dismissing plaintiff's claim and vacating the award. ECF No. 94-1 at 12-13, February 15, 2013. Plaintiff alleges that defendant failed to notify it of the hearing and failed to effectively represent it during such hearing.

Following the entry of the court's order, defendant notified plaintiff that the confirmation had been denied but concealed the fact that the award had been vacated. With regards to any appeal, defendant stated that because the ruling was not "memorialized in writing . . . no time was being lost to appeal said decision." Compl. at ¶ 53. In the following months, Mancini continued to try and contact defendant to discuss the status of the case with little to no success. Id. at ¶¶ 56-62.

At some point before July 2003, plaintiff learned that although defendant had filed a Notice of Appeal of the order vacating the arbitration award, he had never perfected the appeal. Id. at 65-66. Even after being apprised of defendant's alleged failure to perfect the appeal, plaintiff was apparently still willing to rely on defendant's advice. In July 2003, after conferring with defendant, plaintiff authorized a subsequent suit against the same third party for breach of contract and conversion of property (the second action") entitled <u>KA Holdings of New York, Inc. v. Overland Properties, Inc. and Hawthorne Mill LLC</u>, Docket No. 03-CVS-12766. Compl. at ¶ 66. The defendant in that action, Overland Properties, Inc., moved to dismiss based on theories

of res judicata and collateral estoppel. Defendant failed to communicate with plaintiff regarding the substance of this motion and failed to inform plaintiff that Mr. Chagaris had been served with notice that Mancini was to appear for a deposition in September 2003. In May 2004, Plaintiff's New York counsel, Charles Diven ("Diven"), learned that the third party had moved the court for sanctions due to Plaintiff's failure to prosecute and comply with discovery. From May to December 2004, Plaintiff and Diven attempted to contact Mr. Chagaris to obtain copies of relevant litigation documents and expressed their growing frustration.

The presiding North Carolina court held a hearing on the motion for summary judgment in the second action in February 2005. The Defendant did not inform the Plaintiff that the hearing was taking place. On March 21, 2005, Judge Bridges of the Mecklenburg County, Superior Court granted partial summary judgment to the defendants and dismissed all causes of action except the claim for wrongful conversion of property. Thereafter, according to plaintiff, defendant continued to fail to adequately apprise plaintiff of the status of the second action. Plaintiffs were not made aware of the trial date until the day before trial was set to begin on the conversion claim when defendant called plaintiff and notified it that all of its principals and witnesses had to be available in Mecklenburg County the following morning. Compl. at ¶ 77. At the recommendation of Mr. Chagaris, who allegedly told the Plaintiff that he could "correct the situation by withdrawing the Second N.C. Action and then re-filing same," KA Holdings voluntarily dismissed the second action on March 28, 2005.

Superior Court Judge Gray held a hearing on Overland/Hawthorne's motion for sanctions on March 31, 2005, and thereafter awarded sanctions against Plaintiff KA Holdings, but not against defendant. Mr. Chagaris did not provide Plaintiff or Diven with the transcript of these proceedings until September 2006. Plaintiff did not receive a copy of Judge Gray's order until

2007. The Plaintiff alleges that defendant misrepresented the status of the litigation at the March 31 hearing and blamed his own inaction and lack of prosecution on Plaintiff. Plaintiff also later learned that Mr. Chagaris had filed a notice of appeal of Judge Gray's order, but failed to perfect the appeal.

In March of 2005, the court there entered an order dismissing the contract claim with prejudice but allowing the conversion claim to move forward. Id. Plaintiff alleges that defendant committed malpractice in his handling of this matter by 1) never notifying them that he was served with a notice to produce witnesses for the above depositions so plaintiff could comply; 2) failing to exercise reasonable care and diligence in handling the motion to dismiss; and 3) never notifying them hearing on the Motion for Summary Judgment. Compl. ¶¶ 68-73.

Plaintiff alleges that from that time until June of the following year, defendant continuously failed to keep plaintiff abreast of the status of the litigation; failed to return phone calls; and refused fact-to-face meetings with plaintiff's representatives. Id. at ¶¶ 101-17. On March 24, 2006, defendant re-filed the conversion claim against the third party in Mecklenburg County Superior Court entitled <u>KA Holdings of New York, Inc. v. Overland Properties, Inc. and Hawthorne Mill. LLC</u>, Docket No. 06-CVS-6006 (the "third action"). Id. at ¶ 115; Compl. in Third Action, ECF No. 94-4 at 2.

In August of 2006, Superior Court Judge Cayer entered an order dismissing the third action as barred by the applicable statute of limitations. Order on Third Action, ECF No. 94-4 at 6. Defendant appealed the dismissal but Judge Boner dismissed the appeal on September 20, 2006 on the basis that it failed under Fed.R.Civ.P. 12(b)(6) and that the Notice of Appeal included no certificate of service to defendants. Judge Boner simultaneously entered another order awarding sanctions against defendant for filing the third action. Sec. Order on Sanctions,

ECF No.94-5 at 2. Defendant appealed Judge Boners' Order but failed to perfect the same. During this time period and continuing through the end of 2006, plaintiff alleges that defendant continuously failed to communicate to plaintiff the status of the third action.

On October 31, 2007, plaintiff filed the present action in federal district court in the Southern District of New York asserting three different claims for legal malpractice based on defendant's handling of the first, second, and third North Carolina actions respectively. In addition, plaintiff brought a fourth claim against defendant for fraud and a fifth claim for conversion. Defendant now moves for summary judgment on the sole basis that these claims are barred by the applicable statute of limitations.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to

5

defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

### I. MALPRACTICE CLAIMS

The parties agree that the applicable statute of limitations under North Carolina law provides for a three year statute of limitations for legal malpractice claims, with an additional year for injuries not discovered until two or more years after the last act of the defendant giving rise to the cause of action. N.C.Gen.Stat. § 1-15(c). The statute further provides that "in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action." Id. This four year statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce. Black v. Littlejohn, 312 N.C. 626, 633, 325 S.E.2d 469, 474-75 (1985) (citations omitted).

Plaintiff's first claim appears to be that defendant committed malpractice in his handling of the first action in which he failed to argue at the confirmation hearing that the defendant

Overland Properties had failed to seek a stay of the arbitration hearing. Compl. ¶ 45. Plaintiff further alleges that defendant committed malpractice by failing to perfect the appeal of the Order denying confirmation and vacating the award which was entered on December 12, 2002. Id. at ¶ 50; Order, ECF No. 94-1 at 12-13, February 15, 2013. Pursuant to the Rule 3(c) of the North Caroline Rules of Appellate Procedure, defendant had thirty days to file and serve a notice of appeal of that decision. At that point, plaintiff's rights in the first action had likely expired.

The issue thus becomes determining when defendant committed the final act giving rise to the malpractice claim. Plaintiff seems to argue that defendant's final act occurred when defendant ceased representing plaintiff in 2006, not when the thirty day appeal period had expired. Under this construction, plaintiff's complaint filed on October 31, 2007 would not be outside either the three year or four year time bar.

However, defendant has provided no authority that North Carolina has adopted a "continuous representation" theory for professional malpractice claims. See Sharp v. Teague, 113 N.C.App. 589, 439 S.E.2d 792 (1994). On the contrary, there is ample authority holding that the relevant date is the last act of the defendant giving rise to the cause of action not the termination of the attorney-client relationship. See Ramboot, Inc. v. Lucas, 181 N.C. App. 729, 733, 640 S.E.2d 845, 847 (2007) ("[T]he statute plainly states that a malpractice action accrues from the date of the 'last act of the defendant,' not from the date when the attorney-client relationship either begins or ends."). See also Carle v. Wyrick, Robbins, Yates & Ponton, LLP, 738 S.E.2d 766, 770 (N.C. Ct. App. 2013) ("Continued representation after the last act giving rise to the claim does not toll or extend the statute of repose."); Carlisle v. Keith, 169 N.C. App. 674, 614 S.E.2d 542 (2005). While Mr. Chagaris may have continuously committed malpractice

7

from 2002 until the termination of the attorney-client relationship in 2006, defendant has alleged three separate claims of malpractice each of which deserves separate consideration.

Furthermore, even if North Carolina had adopted the "continuous representation" doctrine, plaintiff's argument would be unsuccessful because, under that doctrine:

> the statute of limitations and the statute of repose do not accrue until the *earlier of* either the date the attorney ceases serving the client in a professional capacity with regard to the matters which are the basis of the malpractice action *or the date the client becomes aware or should become aware of the negligent act*.

Sharp v. Teague, 113 N.C. App. at 594 (emphasis addd).

A close reading of the complaint reveals that plaintiff learned of defendant's failure to perfect the appeal at some point before July 31, 2003. While the complaint does not indicate precisely when plaintiff learned of defendant's failure, it does provide the following:

> 65. Plaintiff learned that, although a Notice of Appeal had been filed by Mr. Chagaris, he never perfected same and the time had run.
>
> 66. In reliance on same, Plaintiff authorized Defendant to proceed and, in July, 2003, commenced an action in breach of contract and fiduciary duty against Overland Properties, Inc. . . .

Compl. ¶¶ 65, 66.

Assuming that defendant did not become aware or should not have become aware of the failure earlier than July and taking the facts in the light most favorable to plaintiff, the relevant date – under a continuous representation theory or otherwise – is July 31, 2003 when defendant, after receiving plaintiff's authorization, filed the complaint in the second action. And further assuming for the purposes of this motion that plaintiff is able to take advantage of the four year statute of repose, the complaint in the present action must have been filed on or before July 31, 2007. The record clearly reflects, however, that the complaint was not filed until October 31, 2007, clearly outside the four year "absolute barrier" provided in N.C. Gen. Stat. § 1-15(c).

This, however, is not the end of the story. In addition to the allegations in the complaint that defendant committed malpractice in his handling of the first action, the complaint includes allegations that Mr. Chagaris affirmatively misled plaintiff as to the effect that the failure to appeal the Order would have on plaintiff's chances of recovery. After the Order was entered and the arbitration award vacated, defendant updated plaintiff on the status of the first action and assured them that 1) plaintiff had not been "prejudiced" by the arbitration hearing and 2) that because the court's ruling had not been "memorialized to writing or served on Notice, it was therefore never served on the Defendant and, as such, no time was being lost to appeal said decision."[1] Compl. ¶¶ 51, 52. In addition, the record contains numerous other allegations that up to and after the confirmation hearing defendant affirmatively misled plaintiff, thereby preventing plaintiff from grasping the true extent of defendant's alleged malpractice.

Taking the above allegations in the light most favorable to plaintiff, the court will find that the statute of limitations was equitably tolled due to defendant's alleged fraudulent misrepresentations regarding the status of the first action. Equitable tolling is available only in "those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir.2003). Such "rare instances," may include situations such as this where plaintiff was induced or tricked by defendant's fraudulent misrepresentations into allowing the filing deadline to pass. Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

The essential elements of an equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the acts are otherwise than, and

---

[1] The complaint does not indicate which of plaintiff's officers or attorneys took part in this conversation.

inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the trust as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. Dorman v. Grain Dealers Mut. Ins. Co., 1:09CV268, 2010 WL 1462551 (W.D.N.C. Mar. 18, 2010) report and recommendation adopted, 1:09CV268, 2010 WL 1462557 (W.D.N.C. Apr. 13, 2010) (citing North Carolina Self-Help Corp. V. Brinkley, 215 N.C. 615, 2 S.E.2d 889 (1939).

An element-by-element analysis of the foregoing would be superfluous; suffice it to say that the allegations in the complaint, when taken as true, sufficiently outline a story of fraudulent misrepresentation that convinces the court to allow plaintiff's claims to proceed in spite of the statute of limitations. With that said, the court will keep a vigilant watch on this issue as the facts unravel at trial and reserves the right to revisit the issue.

As to plaintiff's second claim of malpractice, the court will likewise find the applicable time bar to be equitably tolled based on the alleged fraudulent misrepresentations. While the second action was not withdrawn until March 2005 -- clearly within the three-year time bar dating back from the filing of the complaint -- the action was filed in 2003, which would be outside the three year statute. Taking the facts in the light most favorable to plaintiff, as court is required to do, defendant convinced plaintiff that relief would be more easily obtained by filing the second action than waiting for the appeals process to unfold; misled plaintiff as to the substance of the motion to dismiss; and failed to keep plaintiff apprised of the status of the

litigation despite repeated requests for updates and litigation documents. Essentially, plaintiff was misled and cajoled by Mr. Chagaris into believing that their rights had not been adversely affected by his handling of their case against Overland Properties. As above, the court will find for the time being that the statute of limitations has been equitably tolled by defendant's actions but will reserve the right to revisit the issue at trial.

As to the third claim for malpractice, the underlying acts were committed well within the three year statute of limitations, and so defendant's motion will be denied here as well.

## II. FRAUD AND CONVERSION CLAIMS

With regards to plaintiff's fourth claim, the court finds there is a genuine issue of material fact as to whether defendant committed fraud during his professional representation of plaintiff. At trial, plaintiff will have the burden of establishing the underlying elements for fraud and not simply a claim of legal malpractice. At this stage, however, taking the facts in the light most favorable to the non-moving party, the court finds there are sufficient issues of material fact to deny defendant's motion.

Defendant's motion is also denied as to plaintiff's conversion claim as there are genuine issues of material fact as to whether Mr. Chagaris misappropriated the $1,000 allegedly given by defendant to cover the cost of transcripts. The complaint alleges that the funds were misappropriated on November 27, 2006, which would fall well within the statute of limitations for conversion claims. It further alleges that Mr. Chagaris took affirmative steps to conceal the alleged conversion, which may warrant equitable tolling on this claim as well. The court will reserve the right to revisit this issue if the facts at trial indicate otherwise.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#89) is **DENIED**, as the court finds that the present time there are genuine issues of material fact as to each of plaintiff's claims. As explained above however, the court reserves the right to revisit the issue at trial.

Signed: May 10, 2013

Max O. Cogburn Jr.
United States District Judge